**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK NDUKWE, | |
| Petitioner, | CIVIL ACTION NO. 3:25-cv-01709 |
| v. | (SAPORITO, J.) |
| WARDEN OF FPC SCHUYLKILL, | |
| Respondent. | |

**ORDER**

Patrick Ndukwe filed a petition for writ of *habeas corpus* from FPC Schuylkill pursuant to 28 U.S.C. § 2241. (Doc. 1). He contends that the Bureau of Prisons ("BOP") miscalculated his time credits and unlawfully failed to transfer him to prerelease custody[1] in the manner required by the governing statutes. Assuming *arguendo* that the Court would have jurisdiction over any claim in his petition, he has failed to exhaust administrative remedies, and the petition must be dismissed.

[1] Our review indicates that Ndukwe may now be in prerelease custody, *see* https://www.bop.gov/inmateloc/index.jsp (last visited Aug. 27, 2026). Because he has since requested "immediate release from custody" among other relief, *see* (Docs. 9, 11), we do not deny the petition as moot.

## I. BACKGROUND

On June 30, 2023, in the United States District Court for the Southern District of New York, Ndukwe was sentenced to 60 months imprisonment for convictions related to health care fraud. *See United States v. Ndukwe*, No. 1:21-CR-00700 (Doc. 82) (S.D.N.Y.). At the time of his petition, the BOP had calculated his "conditional placement date" in prerelease custody as July 16, 2025. *See* (Doc. 1-2 at 3). Ndukwe was not moved to prerelease custody on that date. Although he challenges a variety of "errors in calculating and processing" his eligibility, the gravamen is that he believes the BOP's delay in transferring him to prerelease custody violated 18 U.S.C. § 3624(c) and recent BOP policy directives encouraging expanded use of home confinement. *See* (Doc. 1 at 7-12, Doc. 1-1 at 8-15).

It is undisputed that Ndukwe did not exhaust administrative remedies in the manner prescribed by the BOP. He now argues that proper exhaustion would be futile; that his other efforts to resolve the issue have "proven to be a dead end"; and that exhaustion should not be required because the BOP has "admitted [its] refusal to effectively implement proper release of inmates." For the following reasons, those

arguments are without merit and the petition will be dismissed.

## II. Discussion

As an initial matter, courts in this district have generally found that they lack jurisdiction over challenges to the BOP's conduct regarding prerelease custody, because such conduct is not inconsistent with the sentencing judgment. *See*, *e.g.*, *Adeboye v. Warden of FCI Allenwood Low*, No. 1:26-CV-00753, 2026 WL 1091998, at *3-4 (M.D. Pa. Apr. 22, 2026) (listing cases); *Raji v. Greene*, No. 3:25-CV-2208, 2026 WL 1021834 (M.D. Pa. Apr. 15, 2026); *but see Hauer v. Greene*, No. 1:25-CV-2070, 2026 WL 448722, at *2 (M.D. Pa. Feb. 17, 2026) ("differ[ing] from decisions by other courts in this district" by finding jurisdiction over a petitioner's "challenge to the BOP's policy that categorically excludes him from placement in prerelease custody"). However, even assuming the Court had jurisdiction to consider Ndukwe's claims of "errors in calculating and processing" his time credits, the petition must be dismissed for his failure to exhaust administrative remedies.

An inmate seeking habeas relief pursuant to section 2241 must generally exhaust the BOP's administrative remedy process. *See Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012) (citing *Moscato v. Federal*

*Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)). Exhaustion may be excused if "the issue presented involve[s] only statutory construction," *Vasquez*, 684 F.3d at 434, or "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (unpublished); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) ("[a]n exception is made [to the exhaustion requirement] only if there is no opportunity to obtain redress . . . [or] if the corrective process is so clearly deficient as to render futile any effort to obtain relief").

The BOP provides a four-step administrative remedy system for prisoners to review any aspect of their confinement. This system consists of a written request for informal resolution on an appropriate form ("BP-8"), a formal request to the Warden ("BP-9"), appeal to a Regional Director ("BP-10"), and finally, appeal to the BOP's Office of General Counsel ("BP-11"). *See* (Doc. 7-1, ¶ 4); 28 C.F.R. §§ 542.10-542.19. For "sensitive issues," defined as those for which an inmate "reasonably believes . . . the inmate's safety or well-being would be placed in danger if the Request became known at the institution," the inmate may submit an administrative remedy directly to the appropriate Regional Director.

*See* 28 C.F.R. § 542.14(d)(1).

Ndukwe argues that exhaustion must be excused as futile because he believes exhaustion would take "about 237 days (8 months) or more" to complete, and his petition asserted an immediate entitlement to prerelease custody. However, district courts within the Third Circuit have repeatedly rejected the argument that an inmate can be excused from exhaustion on that basis. *See*, *e.g.*, *Perez v. Warden of FCI-Schuylkill*, No. 3:25-CV-12, 2025 WL 491999, at *2 (M.D. Pa. Feb. 13, 2025); *Ridgeway v. Warden of FCI-Schuylkill*, No. 3:24-CV-01551, 2024 WL 4744210, at *2 (M.D. Pa. Oct. 23, 2024).

Ndukwe further argues that "communication with the facility as a whole has proven to be a dead end." He attaches a series of electronic messages in which he raised complaints about these issues to prison staff; it appears that staff responded on the merits on at least one occasion. *See* (Doc. 1-1 at 10). Ndukwe also submitted a "sensitive BP-10 appeal," but the BOP's records show that this was rejected.[2] Regardless, there is no

[2] *See* (Doc. 7-1, ¶ 8; Doc. 7-3 at 2) (rejection of an August 14, 2025, remedy "request[ing] FSA credits"). Although the petition refers to an "Attachment B" related to this remedy, *see* (Doc. 1 at 3), the Court did not receive any such attachment.

indication that Ndukwe reasonably believed that disputes over prerelease custody and time credits would have placed his "safety or well-being . . . in danger." *See* 28 C.F.R. § 542.14(d)(1); *see also Womack v. Smith*, No. 1:06-CV-2348, 2011 WL 819558, at *7 (M.D. Pa. Mar. 2, 2011) (a prisoner cannot "avoid procedural default simply by filing a BP-10 form, claiming that his or her grievance is sensitive"). We cannot conclude from these attempts to sidestep the administrative remedy process that the process provided "no opportunity to obtain redress." *See Duckworth*, 454 U.S. at 3; *Braxton v. Spaulding*, No. 4:21-CV-00544, 2021 WL 1516377, at *2-3 (M.D. Pa. Apr. 16, 2021) (prison's staff's failure to respond to electronic messages does not excuse exhaustion).

Finally, Ndukwe argues that exhaustion should not be required because the BOP has "admitted [its] refusal to effectively implement proper release of inmates." He refers the Court to recent policy statements and public comments by BOP leadership, which generally indicate that the BOP will expedite and prioritize inmates' placement in prerelease custody. *See* (Docs. 1-3, 1-4, 1-5). However, these statements do not create an entitlement to prerelease custody, and it does not follow that "the BOP . . . is in agreement that their handling of the matters

presented [in Ndukwe's petition] are unacceptable." *See* (Doc. 1 at 4).[3] Even accepting Ndukwe's inference that the BOP "agrees" with him, that would not be a basis to excuse exhaustion. *See Moscato*, 98 F.3d at 761-62 (courts require exhaustion to "provid[e] agencies the opportunity to correct their own errors").

## III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The petition (Doc. 1) is **DISMISSED**, and any further relief requested in Ndukwe's supplemental filings (Docs. 9, 10, 11) is **DENIED**.

2. The Clerk is **DIRECTED** to close this case.

Dated: August 28, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge

---

[3] Even if the policy statements had the general meanings that Ndukwe attributes to them, several of the issues raised in his petition are based on factual circumstances that are specific to his case. *See*, *e.g.*, (Doc. 1-1 at 10-12, Doc. 7 at 4-5; Doc. 8 at 15-16).